## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Douglas Fauconier,　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　　　**1:22cv460 (TSE/IDD)**
　　　　　　　　　　　　　　　　　　)
Commonwealth of Virginia,　　　　　　)
　　　Defendant.　　　　　　　　　　)

### MEMORANDUM OPINION

Douglas Fauconier ("Fauconier" or "Plaintiff"), a Virginia inmate proceeding pro se,
filed a civil rights action under 42 U.S.C. § 1983. [Dkt. No. 1]. Plaintiff alleges that the
Commonwealth of Virginia violated his right to equal protection because he was not made parole
eligible by an amendment to Virginia Code § 53.1-165.1 effective April 22, 2020, which made
inmates "sentenced by a jury prior to June 9, 2000, for any felony offense committed on or after
January 1, 1995, and who remained incarcerated for such offense on July 1, 2020," eligible for
parole. The bill was enacted and signed by the Governor on April 22, 2020. See 1994, 2nd Sp.
Sess., cc. 1, 2; 2020, cc. 2, 529, 1200, 1272 ("2020 Amendment"). Plaintiff admits he was
convicted of "a felony" in 1998, and as noted below, the online records of the Circuit Court of
Arlington County, Virginia indicate he pleaded guilty in 1998 and 1999 to ten felonies that
occurred in 1996 and was not sentenced by a jury.

The Attorney General was served with the complaint and has filed a motion to dismiss,
with a brief in support. [Dkt. No. 16, 17]. Plaintiff was advised of his right to file responsive
materials to the motion to dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.
1975), and Local Rule 7(K). Plaintiff filed an opposition to the motion to dismiss and a
supporting memorandum, and he also moved for leave to amend. [Dkt. Nos. 22-24]. The motion
to amend seeks to add additional defendants (the Attorney General of Virginia, all current

members of the Virginia General Assembly, and the Governor of the State of Virginia, Glenn

Youngkin). [Dkt. No. 22 at 1]. Accordingly, this matter is now ripe for disposition. For the

reasons that follow, the Commonwealth of Virginia's motion to dismiss must be granted, and

Plaintiff's motion for leave to amend must be denied because he has failed to state a claim and

his proposed amendment would be futile.

## I. Background

Plaintiff is an inmate in the Virginia Department of Corrections ("VDOC"), currently

incarcerated at the Augusta Correctional Center. Plaintiff's complaint reflects that in 1998 he

pled guilty to a felony that involved conduct that occurred in 1996 and that, because he pled

guilty, he was sentenced by a judge and not a jury. [Dkt. No. 1 at 3]. The online records of the

Circuit Court of Arlington County, Virginia establish that Plaintiff pleaded guilty to ten

felonies.[1] Seven of the felonies occurred on July 3, 1996 — two counts of use of a firearm in the

commission of a felony in violation of Virginia Code § 18.2-53.1; two counts of robbery in

violation of Virginia Code § 18.2-58; two counts of abduction in violation of Virginia Code

§ 18.2-48, and one count of animate sexual object . penetration in violation of Virginia Code

§ 18.2-67.2.[2] The other three felonies occurred on August 6, 1996 — one count each of

abduction, robbery, and use of a firearm. At the time of his conviction, Plaintiff was ineligible

for parole under Virginia Code § 53.1-165.1(A), which provided that "[a]ny person sentenced to

---

[1] See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); see, e.g., Lynch v. Leis, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online); see also Phillips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

[2] Plaintiff pled guilty to the animate object penetration indictment on March 23, 1999. He had previously pleaded guilty to the other nine felonies on November 17, 1998.

a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense."

In 2000, the Supreme Court of Virginia considered a case in which a trial court denied a defendant's request for a jury instruction informing the jury that parole had been abolished in Virginia. Fishback v. Commonwealth, 260 Va. 104, 110, 532 S.E.2d 629, 631 (2000) (the appeal was limited to the issue of whether the trial court 'erred in refusing appellant's proffered penalty phase instruction that parole has been abolished in Virginia'").[3] The Supreme Court of Virginia in Fishback reversed its prior decision in Coward v. Commonwealth, 164 Va. 639, 178 S.E. 797 (1935), which had held that "a jury should not be instructed upon the possibility of parole," because it would allow the jury to speculate on "what might occur thereafter during the executive department's administration of the sentence imposed." 260 Va. at 111, 114, 532 S.E.2d at 631, 633. In Fishback, the Supreme Court of Virginia noted that significant statutory enactments since Coward limited the executive branch's ability to "modify[] the sentences imposed on defendants by the judicial branch" and that it was not only "appropriate, but requisite [sic], that we reconsider the policy underlying the Coward rule." Fishback, 260 Va. at 112-13, 532 S.E.2d at 632. With the abolition of parole, Fishback found "[t]he executive branch no longer ha[d] the discretion to grant or deny parole because [Virginia Code § 53.1-165.1(A)] abolishes parole.... [and that] in the context of achieving the goal of 'truth in sentencing,' it simply defie[d] reason that" a jury should not be instructed that parole had been abolished. 260 Va. at 114, 532 S.E.2d at 633. To address the abolition of parole and other forms of early release and sentence reduction, Fishback held

---

[3] Applying precedent, the Court of Appeals of Virginia had held that the "trial court [was] not required to instruct the jury on a defendant's eligibility for parole in non-capital cases" and "affirmed Fishback's convictions in an unpublished opinion. Fishback v. Commonwealth, 1999 Va. App. LEXIS 345, Record No. 1377-98-4 (June 15, 1999)." Fishback, 260 Va. at 110, 532 S.E.2d at 631.

that henceforth juries shall be instructed, as a matter of law, on the abolition of parole for non-capital felony offenses committed on or after January 1, 1995 pursuant to Code § 53.1-165.1. In addition, because Code § 53.1-40.01 is in the nature of a parole statute, where applicable juries shall also be instructed on the possibility of geriatric release pursuant to that statute.

260 Va. at 115-116, 532 S.E.2d at 634. Fishback expressly held that this "new rule of criminal

procedure [was] limited prospectively to those cases not yet final on" June 9, 2000. Id. at 116,

532 S.E.2d at 634.

At a special Session of the Virginia General Assembly in 2020, the General Assembly

amended § 53.1-165.1[4] by adding the following language:

B. The provisions of this article shall apply to any person who was sentenced by a jury prior to June 9, 2000, for any felony offense committed on or after January 1, 1995, and who remained incarcerated for such offense on July 1, 2020, other than (i) a Class 1 felony or (ii) any of the following felony offenses where the victim was a minor: (a) rape in violation of § 18.2-61; (b) forcible sodomy in violation of § 18.2-67.1; (c) object sexual penetration in violation of § 18.2-67.2; (d) aggravated sexual battery in violation of § 18.2-67.3; (e) an attempt to commit a violation of clause (a), (b), (c), or (d); or (f) carnal knowledge in violation of § 18.2-63, 18.2-64.1, or 18.2-64.2.

C. The Parole Board shall establish procedures for consideration of parole of persons entitled under subsection B consistent with the provisions of § 53.1-154.

D. Any person who meets eligibility criteria for parole under subsection B and pursuant to § 53.1-151 as of July 1, 2020, shall be scheduled for a parole interview no later than July 1, 2021, allowing for extension of time for reasonable cause.

Thus, the question presented by the motion to dismiss is whether plaintiff has

stated a claim for a violation of his equal protection rights based on the 2020 Amendment

---

[4] The legislative summary for the bill indicates it was specifically intended to address the ruling in Fishback. The summary states the bill "[p]rovides that a person is eligible to be considered for parole if (i) such person was sentenced by a jury prior to the date of the Supreme Court of Virginia decision in Fishback v. Commonwealth, 260 Va. 104 (June 9, 2000), in which the Court held that a jury should be instructed on the fact that parole has been abolished…." https://lis.virginia.gov (2020 Session, Bills and Resolutions, search "SB 793") (last viewed Jan. 4, 2023).

only providing a remedy to those sentenced by a jury prior to June 2000 and nor providing an opportunity for parole for those, like plaintiff, sentenced by a judge.

## II. Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." ACAFin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). The Federal Rules of Civil Procedure require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." ACAFin. Guar. Corp., 917 F.3d at 211.

To meet the Rule 8 standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the truth of well-pleaded facts is presumed, a court is not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Riddick v. Watson, 503 F. Supp. 3d 399, 410 (E.D. Va. 2020) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).

To succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated *and* that the unequal

5

treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239

F.3d 648, 654 (4th Cir. 2001). Only if he has satisfied both elements of an equal protection claim

will a court consider, in the prison context, whether a classification was "reasonably related to

legitimate penological interests." Id. at 655 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

> But that showing does not secure the claim, as the plaintiff must also plausibly
> allege that the disparity was not justified under the appropriate level of scrutiny.
> [Martin v. Duffy, 858 F.3d 239, 252 (4th Cir. 2017)]. To account for the unique
> health and welfare concerns in the prison context, our review of a plaintiff's
> challenge to a prison decision or policy is more demanding, as we "accord
> deference to the appropriate prison authorities." Turner v. Safley, 482 U.S. 78, 85
> (1987). Under this deferential standard, the prisoner must allege that "the
> disparate treatment [was not] reasonably related to any legitimate penological
> interests." Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002) (cleaned up).

Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020).

The Equal Protection Clause, however, "does not take from the States all power of

classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979). Indeed, "[l]awmaking by

its nature requires that legislatures classify, and classifications by their nature advantage some

and disadvantage others." Helton v. Hunt, 330 F.3d 242, 245 (4th Cir. 2003). "Defining the class

of persons subject to a regulatory requirement—much like classifying governmental

beneficiaries—'inevitably requires that some persons who have an almost equally strong claim to

favored treatment be placed on different sides of the line, and the fact [that] the line might have

been drawn differently at some points is a matter for legislative, rather than judicial,

consideration.'" FCC v. Beach Communications, Inc., 508 U.S. 307, 315-16 (1993) (quoting

United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980)); see also Wilkins v.

Gaddy, 734 F.3d 344, 347 (4th Cir. 2013) (quoting Heller v. Doe, 509 U.S. 312, 319 (1993)).

""[U]nless a statute affects a fundamental right or some protected class, courts generally accord

the legislation a 'strong presumption of validity' by applying a rational basis standard of

review."). Since "classification is the very essence of the art of legislation," a challenged

classification is "presumed to be constitutional under the equal protection clause." Moss v. Clark, 886 F.2d 686, 689 (4th Cir. 1989).

To survive a constitutional challenge under the Equal Protection Clause, the classification in question "need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender...." and the Fourth Circuit does not "recognize prisoners as 'a suspect class.'" Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008) (quoting Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997)); accord Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) ("Prisoners are not a suspect class.").

In discussing judicial review of a legislative classification, Heller observed that the Equal Protection Clause does not

> authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

509 U.S. at 319-320 (citations omitted).

### III. Analysis

The Commonwealth of Virginia argues that Plaintiff has neither stated a claim that he was treated any differently from others similarly situated nor has plaintiff demonstrated facts in the complaint that the alleged unequal treatment was the result of intentional or purposeful discrimination. [Dkt. No. 17 at 2-3]. In response, Plaintiff seeks to add individual defendants and argues his right to equal protection has been violated because his post-January 1, 1995

7

conviction is not covered by the 2020 Amendment. Plaintiff's arguments have no merit, and his complaint will be dismissed because amendment is futile.

Plaintiff alleges he is similarly situated to the inmates who were made parole eligible under the 2020 Amendment and that the failure to provide a remedy to him is a violation of his equal protection rights. Section 53.1-165.1(B) and (D),[5] however, only applies to those inmates whose juries were deprived of the information that parole had been abolished in Virginia. In Virginia, trial judges, unlike juries, are presumed to know the law.[6]

Moreover, even assuming Plaintiff could establish that he was similarly situated to inmates made eligible for parole by the 2020 Amendment, there is no evidence of intentional or purposeful discrimination. To the contrary, the General Assembly enacted a statute – the 2020 Amendment – clearly intended to provide only a remedy for inmates sentenced by juries between January 1, 1995 and June 9, 2000, where the juries were not instructed that parole had been abolished in Virginia. Finally, the enactment has a rational basis and the "fact [that] the line might have been drawn differently" is "a matter for legislative, rather than judicial, consideration.'" Beach Communications, Inc., 508 U.S. at 315-16; see, e.g., Mahfouz v. Lockhart, 826 F.2d 791, 794 (8th Cir. ) ("The state's decision to distinguish sex offenders as a group from other inmates and exclude them from the work release program is rationally related

---

[5] In addition to having been sentenced by a jury after January 1, 1995 and before June 9, 2020, the statute precluded persons who were convicted of "(i) a Class 1 felony or (ii) any of the following felony offenses where the victim was a minor: (a) rape in violation of § 18.2-61; (b) forcible sodomy in violation of § 18.2-67.1; (c) object sexual penetration in violation of § 18.2-67.2; (d) aggravated sexual battery in violation of § 18.2-67.3; (e) an attempt to commit a violation of clause (a), (b), (c), or (d); or (f) carnal knowledge in violation of § 18.2-63, 18.2-64.1, or 18.2-64.2." Va. Code Ann. § 53.1-165.1(B). Although Plaintiff admits he was convicted of a felony, he does not state the nature of the felony.

[6] See Weathers v. Commonwealth, 262 Va. 803, 805 553 S.E.2d 729, 730 (2001) ("When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly."); Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003) (where a judge is sitting without a jury "[t]he judge is presumed to know the law and to apply it correctly in each case.") (citing Starks v. Commonwealth, 225 Va. 48, 54, 301 S.E.2d 152, 156 (1983)).

8

to the legitimate government purpose of preventing sex crimes and thus does not violate the equal protection clause.").

In sum, plaintiff falls outside the plain language of the 2020 Amendment which therefore has no application to his case.  Moreover, plaintiff cannot state an equal protection claim based on his exclusion from the remedy provided by the 2020 Amendment because the General Assembly had a rational basis to distinguish between those inmates sentenced by juries, who would not have been aware of the unavailability of parole, and those inmates sentenced by judges, who are presumed to be aware of changes to the law such as the unavailability of parole. Accordingly, plaintiff cannot state an equal protection violation and the motion to dismiss must be granted.

****

Plaintiff also seeks leave to amend his complaint to add additional defendants, apparently in response to the portion of the motion to dismiss seeking dismissal of the Commonwealth as a defendant. [Dkt. No. 22 at 1-2]. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted).  In this instance, the amendment would be futile. Even assuming that the proposed amendment was allowed, the complaint would nevertheless fail at the threshold because it fails to state an equal protection violation.  In short, the proposed amendment would not cure the complaint's lack of merit. [7]

---

[7] See US Airline Pilots Ass'n v. AWAPPA, LLC, 615 F.3d 312, 320 (4th Cir. 2010) (holding that the district court did not abuse its discretion in denying leave to amend where the proposed amendment "would have no impact on the outcome of the motion to dismiss"); see, e.g., Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 304 (2d Cir. 2020) (holding the district court did not err in denying the plaintiff's application to amend her complaint because the

9

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [Dkt. No. 16] must be granted, and Plaintiff's motions for leave to amend and in opposition to the motion to dismiss [Dkt. Nos. 22, 23] must be denied. An appropriate order will issue alongside this memorandum opinion.

Entered this 4th day of January, 2023.

Alexandria, Virginia

/s/

T. S. Ellis, III
United States District Judge

---

new allegations would not save her claim and if the complaint were amended it "would not withstand a motion to dismiss").

10